THE STATE ex rel. CITY OF SEDALIA, Appellant, v. PUBLIC SERVICE COMMISSION et al.

Division One, July 5, 1918.

1. **FRANCHISE ORDINANCE: Contract.** The passage of an ordinance by the council of a city of the third class and its acceptance by a water company, by which it is provided that the rent on city hydrants shall be a named sum per year, constitute a contract between the city and company, whether or not the ordinance is submitted to a vote of the people.

2. **WATER RATE: In Excess of Ordinance Rate: Power of Public Service Commission.** The Public Service Commission of Missouri has the lawful right to fix the rate for hydrant water, so far as the city is concerned, in excess of the rate fixed by an existing ordinance.

3. **PUBLIC SERVICE ACT: Police Regulation: Legislative Delegation of Power.** The Public Service Act of 1913 and the fixing of reasonable rates to be charged by a public utility company are traceable to the police power of the State, and the Legislature can delegate to the Public Service Commission the power to ascertain and fix reasonable rates for services rendered to the public by divers public service corporations, subject to court review of the question of reasonableness.

4. **POLICE POWER: Abridgment: Nullifying Existing Contracts.** The State of Missouri cannot divest itself of the right to exercise its police power. The Constitution declares that "the exercise of the police power of the State shall never be abridged," and such power cannot be contracted away, nor can the Legislature authorize a municipal corporation to contract it away. A statute which authorizes a city to contract for water service to the city and the general public may be so modified as to delegate to a legislative agent the power to fix rates different from those mentioned in such contract, for the Legislature cannnot authorize a municipal corporation and a public service corporation to make a contract which will preclude the sovereign power of the State from fixing reasonable rates irrespective of the contract.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*R. S. Robertson* for appellant.

(1) Councils of cities of the third class have the power and authority to enter into valid and binding contracts for furnishing the city water for fire hydrants without the necessiy of submitting such contracts to the voters. R. S. 1909, sec. 9239. (2) Municipalities of Missouri are not creatures of the Legislature, but are creatures of the Constitution, and therefore the Commission was in error in holding that the Legislature had the right to vest in the Commission the power to either legislate for the city, or to act for the city, in waiving the benefits accruing to the city under a contract entered into by the city prior to the creation of the Public Service Commission. Mo. Constitution, art. 9; Merchants National Bank of San Diego v. Esconvido Irrigation District, 77 Pac. 939; Tacoma Ry. and Power Co. v.

City of Tacoma, 1917D, P. U. R. 891. (3) If the Legislature had the power and authority as held by the Commission to act for cities in abrogating and cancelling contracts entered into by the city, it has not the power to delegate such authority to some other body or to the Public Service Commission, but must exercise its legislative power vested in it by Section 1 of Article 4 of the Missouri Constitution. Lammert v. Lidwell, 62 Mo. 190. (4) The Commission having found that the contract entered into by the City Water Company for furnishing fire hydrants was a valid contract, and it having been entered into, as the Commission held, with the full sanction of the Legislature as clearly expressed in Sec. 9239, R. S. 1909, then, until the Legislature has in some way clearly expressed an intention to either abrogate and take from the city the benefits of that contract, or to vest in some other body the power to abrogate and take from the city the benefits of the contract, it must stand, and in the law creating the Public Service Commission there was no such intention shown by the Legislature, but the contrary intention was clearly shown. Paragraph 5, sec. 69, Public Service Commission Act, Laws 1913, p. 605; Anderson v. Cortelyou, 68 Atl. 120. (5) The decision and order of the Commission directly violates the Federal and State Constitutions in that it impairs obligations of contracts and takes from the city its property without due process of law. Mo. Constitution, sec. 15, art. 2; U. S. Constitution, sec. 10, art. 1, and Fourteenth Amendment.

*Alex. Z. Patterson* and *James D. Lindsay* for respondent.

(1) The city of Sedalia and the water company in the making of the so-called franchise contract, were bound by cognizance of the fact that their dealings were subject to future exercise of the Legislature's power over rates of public utility companies. Hence, the franchise contract was made subject to the Legislature's making use of the State's inherent power, reserved and not exclusively delegated to the city, to supervise all public

service charges.  And when the Legislature in its wisdom saw fit to exercise its reserved power of supervision over the matter of public service rates by the creation of a Public Service Commission, and the delegation of rate-making to such Commission, the rates mentioned in the franchise became subject to regulation by such Commission.  Puget Sound T. L. & P. Co. v. Public Service Commission, 244 U. S. 574; Milwaukee Elec. Ry. v. Wisconsin Railroad Co., 238 U. S. 174; Worcester. v. Street Ry. Co., 196 U. S. 539; New Orleans v. New Orleans Water Works Co., 142 U. S. 79; Home Tel. Co. v. Los Angeles, 211 U. S. 265; Home Tel. & Tel. Co. v. Los Angeles, 155 Fed. 554 (U. S. C. C. A.); Portland Ry. L. & P. Co. v. City of Portland, 210 Fed. 667; People ex. rel. N. Y. & N. S. T. Co. v. Public Service Commission, 162 N. Y. Supp. (App. Div.) 405, P. U. R. 1917 B. 957; People ex rel. Bridge Pp. Co. v. Public Service Commission, 138 N. Y. Supp. 434, 153 App. Div. 129; Chicago v. O'Connell, 278 Ill. 591, P. U. R. 1917 E. 730; Collingsworth Sewerage Co. v. Borough of Collingsworth 102 Atl. (N. J.) 901; Inhabitants Town of Phillipsburg v. Board of Publ. Utilities Com'rs., 88 Atl. (N. J.) 1096; Dawson v. Dawson Tel. Co., 137 Ga. 62; City of Woodburn v. Pub. Serv. Comm. 161 Pac. (Ore.) 391; State v. Superior Ct. of King Co., 120 Pac. 861, 67 Wash. 37, L. R. A. 1915 C. 287; City of Pawhuska v. Pawhuska, 166 Pac. (Okla.) 1058; Pioneer Tel. & Tel. Co. v. State, 33 Okla. 724, 127 Pac. 1073; Duluth St. Ry. Co. v. Railroad Com., 152 N. W. (Wis.) 887; Milwaukee Elect. Ry. & Lt. Co. v. Railroad Com., 142 N. W. 491, 153 Wis. 592; Manitowoc v. Manitowoc & W. Traction Co., 145 Wis. 13, 129 N. W. 925; City of Benwood v. Public Service Comm., 83 S. E. (W. Va.) 295, L. R. A. 1915 C. 261; Turtle Creek v. Pennsylvania Water Co., 243 Pa. 415; Bellevue v. Ohio Valley Water Co., 247 Pa. 91; Yeatman v. Towers, 126 Md. 513.

GRAVES, J.—Stripped of all useless verbiage this case involves but one question.  By ordinance of the city of Sedalia, duly accepted by the predecessor of the

City Water Company of Sedalia, Missouri, it was provided that the rent on city hydrants should be thirty dollars per annum, and certain other water service to the city should be free of charge. This was what is usually called the franchise ordinance. It was never submitted to the vote of the people, but for the question here involved we deem this immaterial. The passage of the ordinance by the City Counsel, and the acceptance thereof by the predecessor of the said City Water Company, constituted a contract between the city and the water company.

From the record here it can be gathered that citizens of the said city complained of the water service, and their complaint was heard by the Public Service Commission, which resulted in the said Public Service Commission requiring the City Water Company to expend something near $100,000 for appropriate water reservoirs and other improvements. Thereafter the City Water Company applied to the Public Service Commission for increased rates for their service, both to the city and the general public. This required an investigation as to the valuation of the plant and other matters to be considered upon the question of increasing the rates. The relator here was permitted to intervene in these proceedings, which were consolidated as one. The relator planted its right upon the contract provided for in the ordinance, supra. Other trivial questions were raised, but to our mind they do not merit notice.

The Public Service Commission heard evidence as to the value of the water plant and other subjects proper to be considered upon the question of water rates. The city was a party throughout these hearings. The result was a general raising of rates, and especially a raising of hydrant rentals (which were to be paid by the city) from $30 per annum to $45 per annum. The ordinance aforesaid was in evidence upon this hearing. Not being satisfied with the rates fixed by the Public Service Commission, the city, by statutory *certiorari*, took the matter to the circuit court of Cole County, where the reasonableness of the rates fixed by the Public Service Commission

was approved by that court, and from such judgment of approval and affirmance this appeal has been taken.

Under the facts of the record the reasonableness of the rates fixed by the Public Service Commission cannot be seriously questioned. This leaves the single question as to whether or not the Public Service Commission had the lawful right to fix a rate, so far as the city is concerned, in excess of the ordinance rate. Such is the case when cleared of all driftwood.

I. The question in this case is one in a number of cases, either here or headed this way. The importance of the question bespeaks care and also requires us to take an invoice as to where we are under the Public Service Commission Act. We have adopted the idea of viewing this act in a kindly spirit by giving it a liberal construction. In State ex inf. v. Kansas City Gas Co., 254 Mo. 1. c. 535, we said:

*Act to be Kindly Viewed.*

"The act, then, is a highly remedial one filling a manifest want, is worthy a hopeful future, and on well-settled legal principles is to be liberally construed to further its life and purpose by advancing the benefits in view and retarding the mischiefs struck at—all *pro bono publico*. Besides all which, the lawmaker himself has prescribed it 'shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities.' [Sec. 127.]"

See also State ex rel. v. Public Service Commission, 259 Mo. 1. c. 713.

Not only so, but we have traced the Public Service Commission Act to the police power of the State. In the Gas Company case, supra, 254 Mo. 1. c. 534, in speaking of this law, we said:

*Police Power.*

"That act is an elaborate law bottomed on the police power. It evidences a public policy hammered out on the anvil of public discussion. It apparently recognizes certain generally accepted economic principles and conditions, to-wit, that a public utility (like gas, water, car service, etc.) is in its nature a monopoly;

that competition is inadequate to protect the public, and, if it exists, is likely to become an economic waste; that State regulation takes the place of and stands for competition; that such regulation, to command respect from patron or utility owner, must be in the name of the overlord, the State, and to be effective must possess the power of intelligent visitation and the plenary supervision of every business feature to be finally (however invisibly) reflected in rates and quality of service. It recognizes that every expenditure, every dereliction, every share of stock or bond or note issued as surety is finally reflected in rates and quality of service to the public, as does the moisture which arises in the atmosphere finally descend in rain upon the just and unjust *willy nilly*.''

To like effect is State ex rel. v. Public Service Commission, 259 Mo. l. c. 712, whereat it is said:

''The statute involved is new. Referable to the police power, it evidences a departure (or at least an advanced thought) in public policy in dealing with common carriers and public utilities in Missouri. It touches at so many vital points so many vital and open questions; it is such a brave and deserving attempt to provide a speedy and sensible scheme for settling controversies so prevalent, so obstinate, so old, so raw and inflamed between public utility companies and their patrons (to-wit, the public) that wisdom demands its judicial construction proceed with discriminating caution. It is so vast and intricate that it cannot be construed all at once and all doubts dispelled slap-dash in a lump as science now kills mosquitoes. The better course is to build up a construction by evolution, step by step, and, to that end, decide nothing except what is precisely necessary to a determination of vital questions raised in each concrete case. Peradventure by that safe and conservative course important phases of the statute will in an orderly way and in due time be digested and so assimilated by sound interpretation that all its remedies will eventually be advanced and all mischiefs within its purview be retarded.''

We have further recognized that the Legislature can delegate to the Public Service Commission the power to ascertain and fix reasonable rates for services render- **Delegation.** ed to the public by the divers public service corporations. [State v. Public Service Commission, 194 S. W. l. c. 291.] In this case FARIS, J., has aptly said:

"It is also settled beyond doubt or cavil that this power of prescribing maximum rates for common carriers, which, as we have seen, legislatures possess pursuant to an untrammeled grant of the power to pass laws, may be delegated to a railroad commission or to a public service commission. To this rule, unless inhibited by express constitutional provision, there is not a reputable exception."

Other Missouri cases might be cited, but these suffice for the thought now in mind. First, it is made clear by these cases that the ascertaining and establishing of reasonable rates for public service is one falling within the police power of the State. Let us stick a peg here, because this becomes important later. Second, it is likewise made clear that the fixing of reasonable rates may be delegated by the Legislature to the Public Service Commission, subject, of course, to a court review upon the question of reasonableness.

. With these two questions made clear and conclusive by our own rulings we will take up later the real question of the instant case. In its discussion there should be kept constantly in mind the two questions, supra: (1) that the fixing of reasonable rates for public service is traceable to the police power of the State, and (2) that within proper bounds and limitations the fixing of such reasonable rates can be committed to a body, such as our Public Service Commission.

II. It is claimed by relator that under the last proviso of Section 9239, Revised Statutes 1909, the city was authorized to contract for water service to **Abridgement of Police Power.** the city without having such contract submitted to a vote of the people. This we think is true. Such is the statutory

provision.   The question really is to what extent such contract is effected by a subsequent law by and through which the Legislature asserts the sovereign power of the State relative to regulating rates for public service.

In reality the question is deeper than suggested above.   Going to our Constitution, the real question is, can the Legislature authorize a municipal corporation or a public service corporation to make a contract as to rates which contract will preclude the sovereign power of the State from fixing reasonable rates irrespective of the contract?   We use both the terms "municipal corporation" and "public service corporation" purposely, because they are usually the opposing parties to the contract.   In the instant case the municipal corporation is the party to the contract upon one side, and a public service corporation is the party upon the other side. The two corporations are the two parties which stood at arms-length in the making of the contract here involved.   So that we are forced to answer the question, "Can the State of Missouri divest itself of the right to exercise its police power?"   This court has held, and we think rightfully so, that the fixing of reasonable rates for service to be rendered to the general public (which general public includes municipal corporations, as well as the citizens thereof) is an exercise of the sovereign police power of the State.   Section 5, Article 12, of the Missouri Constitution reads: "The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State."

Note the language, "the exercise of the police power of the State shall never be abridged."   Under such a constitutional restriction the Legislature would be powerless to enact a valid law by the terms of which the right of the State in the exercise of its sovereign police power in the fixing of reasonable rates for public services could be limited or abridged.   This court so held in Tran-

275 Mo.—14

barger v. Railroad, 250 Mo. l. c. 55, whereat BOND, J., said:

"(2)   All powers of government which regulate the public health, welfare and the property rights of its people—these, no State can strip itself of, for that would render it incapable of carrying out the prime purposes of its creation. The sanctity and import of this attribute of sovereignty are recognized in the Constitution of this State, to-wit: 'The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State.' [Art. 12, sec. 5, Constitution of Missouri.] The only restrictions upon the exercise of this faculty are that its use shall be reasonably adapted to the ends for which it is given, and that it shall not infringe any right or privilege guaranteed by the Federal Constitution. The authorities and cases demonstrating these principles are uniform."

Some of us thought the pronouncement a little broad and dissented, but the case was taken to the United States Supreme Court and there affirmed. [Chicago & Alton Railroad Co. v. Tranbarger, 238 U. S. 67.]

The United States Supreme Court was even more explicit in this Tranbarger case than was the majority opinion in this court. To its rule we must bow. At page 76 of 238 U. S., in this Tranbarger case, it is said:

"It is established by repeated decisions of this court that neither of these provisions of the Federal Constitution has the effect of overriding the power of the State to establish all regulations reasonably necessary to secure the health, safety, or general welfare of the community; that this power can neither be abdicated or bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. [Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 558, and cases cited.] And it is also settled that the police power embraces regulations designed to promote *the public convenience*

*or the general welfare and prosperity* as well as those
in the interest of the public health, morals or safety.
[Lake Shore & Mich. Southern Ry. v. Ohio, 173 U. S.
285, 292; C. B. & Q. Ry. v. Drainage Commissioners,
200 U. S., 561, 592; Bacon v. Walker, 204 U. S. 311,
317.]''

The italics in the above quotation are ours. It was
under similar definitions of ''Police Power'' that
this court held that the fixing of reasonable rates for
public service is the exercise of the sovereign police
power of the State. Such power cannot be contracted
away, nor can the Legislature of the State authorize a
municipal corporation to contract away this police power
of the State. It is clear that the Legislature cannot
confer more power upon one of its creatures (a municipal
corporation) than it possesses itself. The Legislature
is prohibited by the Constitution from abridging the
police power of the State, and it cannot legally authorize
any creature of the Legislature to abridge this sovereign
power. So that we care not what the literal meaning of
Section 9239, Revised Statutes 1909, may be. If it be
construed so as to abridge or limit the exercise of the
sovereign police power of the State, the Legislature
overstepped constitutional limitations in enacting it. If
it be construed as simply authorizing a contract until
such time as the State saw fit to assert its police power,
as it did in the Public Service Commission Act, then
it would be at least harmless in the instant case.

It is, however, clear that under our Section 5 of
Article 12 of the Constitution of 1875 (a section not
theretofore found in our Constitution) the Legislature
itself cannot abridge the police power of the State. Nor
can it authorize a municipal corporation to make a con-
tract abridging or limiting such police power. So that
if, as we have held, the fixing of rates for public service
is an exercise of the police power, then under other
rulings cited above the Public Service Commission had a
right to fix reasonable rates irrespective of the alleged
contract. The great weight of authority so holds. Cases
from a great number of states will be found in the briefs

for the Public Service Commission.  These discuss the question from different angles, but reach the same conclusion.  We have preferred to rest the ruling in this case upon what this court has previously ruled, which rulings have been in the light of our own peculiar constitutional provision.  Under it the sovereign police power of the State is preserved intact, irrespective of contracts with reference to rates for public service.  Under it no contract as to rates will stand as against the order of the Public Service Commission for reasonable rates, whether such reasonable rates be lower or higher than the contract rate.  Under the Constitution and the Public Service Commission Act the Public Service Commission (supervised by the courts as to the reasonableness of rates) is exercising the police power of the State by its delegated authority from the Legislature.  Its rates therefore constitutionally and legally supersede any and all contract rates.  Other theories of case law need not be noted.

Let the judgment *nisi* be affirmed.  It is so ordered.  All concur.