## O'KEEFE et al. v. CITY OF NEW ORLEANS et al.

(District Court, E. D. Louisiana, at New Orleans. April 21, 1921.)

No. 16579.

1. **Courts** ⊂⊃351½—**Bill in federal court will not be dismissed on motion, unless clearly insufficient.**

   A bill will not be dismissed on motion made under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), unless ground for dismissal clearly appears on its face, and the court in its discretion may refuse to act on the motion and require the filing of an answer.

2. **Carriers** ⊂⊃2—**Contract fixing street railway rates invalid as abridging police power of state, in violation of Constitution.**

   The making of rates for public service corporations is within the police powers of the state, and under Const. La. art. 263, providing that "the exercise of the police powers of the state shall never be abridged," as construed by the Supreme Court of the state, a city, though having delegated authority to grant franchises to street railways and to regulate the same, is without power to make a binding contract fixing a rate of fare to be charged by a street railroad company during a term of years, and where a rate so fixed becomes confiscatory and in violation of the federal Constitution the contract does not preclude its change by the city or state, nor prevent a court from enjoining its enforcement.

In Equity. Suit by J. D. O'Keefe, receiver of the New Orleans Railway & Light Company, and others, against the City of New Orleans and others. On motions by complainants for preliminary injunction, and by defendants to dismiss bill. Motion to dismiss denied, and injunction granted.

Farrar, Goldberg & Dufour, of New Orleans, La., for plaintiffs.

Ivy G. Kittredge, Michel Provosty, and W. Catesby Jones, all of New Orleans, La., for defendants.

HENRY D. CLAYTON, District Judge. The court has taken jurisdiction of the subject-matter here involved in the case of the Empire Trust Company as trustee, complainant, against the New Orleans Railway & Light Company et al., defendants, No. 15960, in equity, pending in this court. This suit, styled in the caption hereof, was brought by direction of the court under order made April 15, 1921, and it is therefore ancillary to the main cause.

This cause came on for hearing on the application of the plaintiffs, the receiver and the others, for an interlocutory injunction as prayed for in the bill, and at the same time on the motion of the city of New Orleans and the other defendants to dismiss the bill. By consent of the parties in open court the application and motion were submitted, heard, and argued at the same time.

The defendants made no formal answer to the bill, but for the purposes of this hearing, on the motion to dismiss, the defendants rest their case upon the proposition, in effect, that the bill does not present a case for equitable cognizance, and therefore should for that reason be dismissed, and that as a necessary corollary the application of the receiver for injunction should be denied.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The bill is supported by affidavit and other documentary evidence. The verified motion to dismiss does not challenge the material facts alleged in the bill.

[1] In the application of equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), abolishing pleas and demurrers, and providing that other defenses in point of law arising on the face of the bill, which previously should have been made by plea or demurrer, shall now be made by motion to dismiss or in answer, the law is settled in numerous adjudged cases that upon the consideration of the motion the court may in its discretion, when promotive of justice, refuse to decide a case on such motion, and that defense by answer may be required. Indeed, the rule goes to the extent that, unless the motion clearly discloses that on the allegations of the bill, which are taken as true, it must be dismissed upon final hearing, the preliminary motion to dismiss must be denied.

Under the facts and circumstances disclosed in the bill, justice can be better secured by leaving the merits of the case to be disposed of after the coming in of the answer, rather than by now dealing with the controversy in ultimate way. At the present stage of the case the developments are not sufficient to afford a satisfactory and final determination of the questions of fact and law involved. Accordingly an order will be entered, denying the motion of the city to dismiss the bill.

[2] Coming, now, to the consideration of the application for injunction pendente lite, it may be said that the immediate cause for such application is the ordinance adopted by the city commission council of New Orleans. It is in these words:

"Section 1. Be it ordained by the commission council of the city of New Orleans that, subject to the provisions hereinafter set forth, Ordinance No. 5892, C. C. S., is hereby continued in full force and effect for the period of thirty days from and after April 20, 1921: Provided that the receiver of the property of the New Orleans Railway & Light Company shall sell to the public on demand at the offices of the company and at such other places as are convenient to their patrons of the various street car lines, car fare tickets or metal checks in lots of ten or more at the rate of seven and one-half cents per ticket, check or fare: And provided further that during said period no charge for transfers shall be made and a single fare shall be charged on belt lines as at present: And provided further that all money or revenue derived from that part of every car fare in excess of six cents shall be used and employed for wages and taxes and shall not be used to pay interest or dividend upon securities: And provided further that during said period there shall be no increase in the present rates for electric light and power service.

"Sec. 2. Be it further ordained, etc., that this ordinance shall become effective upon the receiver with the authority of the United States District Court for the Eastern District of Louisiana, filing his written acceptance hereof with the clerk of the commission council."

With the approval of the District Court the receiver declined to accept said ordinance and has refused to operate the street railway system under his control on the conditions named therein, and afterwards the receiver, joined therein by his codefendants, and by direction of this court (Judge Foster) filed the bill in this case, and alleges among other things that the authorities of the city of New Orleans had passed the ordinance to reduce the fare to 7½ cents on the street railways now in the hands of the receiver of this court with certain conditions,

among these that the revenue derived from that part of every car fare in excess of 6 cents shall be used and employed for wages and taxes, and shall not be used to pay interest or dividends upon securities. The ordinance further authorized the 7½ cents for only 30 days from April 20, 1921, and that after such time the rate would revert to five cents, and the allegations of the bill are to the effect that this would not permit the earning of the operating expenses and would therefore be confiscatory. The further contention of the plaintiffs is that the ordinance is a regulatory declaration, in effect that the owners of the street railways and the creditors who hold the bonds of the corporation are not entitled to a fair return, and therefore that this ordinance is an effort on the part of the city to take private property for public use without just compensation, and that the owners of the street railways are sought to be deprived of property without due process of law.

The city has asserted that it has, in the franchises granted to the defendant railways companies, irrevocable contracts made some years ago whereby the rate of passenger fare was fixed at five cents, and that it is not now within the power of this court to subtract therefrom, and that such rate of fare cannot be changed, except by consent of the city as one of the contractual parties. This brings us at once to the consideration of the franchise contracts between the city of New Orleans and the New Orleans Railway & Light Company and its subsidiaries, and just how far the court is bound to respect such contracts. It is not less than trite to say that the contracts are in a sense legal and also that they will be upheld in the main, and altogether if they are not in their practical working at this time rendered confiscatory. And this involves a mixed question of fact and law.

The prayer for injunctive relief is predicated upon the assertion that the fare of five cents, and indeed any fare less than eight cents, would not furnish a fair return on the fair value of the property employed in the street car public service, and therefore that to require such public service at a rate less than eight cents per fare would be to deprive the plaintiffs of their property without due process of law, and in violation of the Constitution of the United States, and particularly the Fourteenth Amendment, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"; and also in violation of that provision of the Constitution that "no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Const. Amend. 5.

The power to grant the franchise and to make rates for public service corporations involves the inherent or police power of the state. Under the Constitutions of Louisiana adopted in 1879 and at different subsequent times, during which period all the franchises in question were granted, the police power was by express constitutional prohibition

made inalienable and rendered not subject to abridgment. It is hardly necessary to cite authorities in support of the proposition that rate-making is a sovereign power of the state, for it was declared so to be as far back as Munn v. Illinois, 94 U. S. 124, 24 L. Ed. 77, and the doctrine has been reaffirmed in a multitude of cases since adjudged. C. & A. v. Tranbarger, 238 U. S. 67, 35 Sup. Ct. 678, 59 L. Ed. 1204, and cases therein collated. Almost contemporaneous with the Munn Case the Supreme Court of Louisiana in C. C. Gaslight Co. v. N. O. Gaslight Co., 27 La. Ann. 138–147, declared that—

"No one has the right to dig up the streets and lay down gas pipes, erect lamp posts, and carry on the business of lighting the streets and houses of the city of New Orleans, without special authority from the sovereign. It is a franchise belonging to the state, and in the exercise of the police power the state could carry on the business itself, or select one or several agents to do so."

And in Portland v. Public Service Commission, 89 Or. 325, 173 Pac. 1178, the Supreme Court of Oregon said:

"The argument of the plaintiff is that the public peace, health, and safety comprise the sole objects of the police power of the state; that these are not affected by the rate of fare to be charged by a street car company; and hence that the police power is not available to modify the rates. But, as held in Woodburn v. Public Service Commission, 82 Or. 114, 161 Pac. 391, L. R. A. 1917C, 98 [P. U. R. 1917B, 967], Ann. Cas. 1917E, 996, the police power is not restricted to such narrow limits. As stated in section 1, article 1, of our state Constitution, governments are instituted for the peace, safety, and happiness of people. In other words, the general welfare of the people is within the police power of the government and one of the peculiar objects of its care. The discussion of the plaintiff omits all consideration of the principle that it is primarily the duty of the state, in the interests of the public, to see that all concerns that serve the public be content with, and also are entitled to receive, reasonable compensation for their services. 10 C. J. 411. All rate regulations depend upon this principle. Reasonableness is the polestar in all investigations of the subject. Conditions change, and what was reasonable 20 years ago may be unreasonably high or unreasonably low to-day. The question to be decided is: Who shall determine this, and is the contract subject to revision in that respect?"

In Georgia Banking Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377, involving the right of the people of Georgia to establish a railroad commission, the Supreme Court held that for the plaintiff, which had the powers of a public service corporation, certain rates of transportation were provided, and that the grantee under this legislative authority had no power which would preclude the exercise by the state of its sovereign power to regulate rates. And this must be so, because it was said in Milwaukee Electric v. Wis. R. R. Com., 238 U. S. 178, 35 Sup. Ct. 820, 59 L. Ed. 1254, speaking with reference to contract provisions of street railway franchises, that—

"It has been uniformly held in this court that the renunciation of a sovereign right of this character must be evidenced by terms so clear and unequivocal as to permit of no doubt as to their proper construction."

Further discussion of this point is unnecessary, particularly in view of article 263 of the Constitution of Louisiana, and the cases arising thereunder. This article provides that—

"The exercise of the police power of the state shall never be abridged, nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the state."

In Black v. N. O. Ry. & Light Co., 145 La. 180, 82 South. 81, the franchises here under scrutiny were involved in determining whether the commission council of the city of New Orleans had a right to grant the New Orleans Railway & Light Company a six-cent fare. There the court said:

"The burden of plaintiff's complaint [the plaintiff stood in the place of the city] is that the raise in car fares 'impairs the obligation of the contract between the said city of New Orleans, its citizens, inhabitants, and people, and especially petitioners, on the one part, and the said New Orleans Railway & Light Company and underlying companies on the other part, which is a contravention of article 166 of the Constitution of the state of Louisiana and of section 10, art. 1, of the Constitution of the United States.' The only contracts referred to in the petition are those entered into between the city and various railway companies, to which plaintiffs were not parties, and which were made under express legislative authority, and under the police power of the state and city, and contracts granting privileges are always within and under the control of the state to change, modify, or revoke. These contracts are essentially not made with individual citizens."

The power to regulate public service corporations through commission, notwithstanding franchise provisions in municipal grants, is recognized in People ex rel. Village of South Glen Falls v. Public Service Commission, 225 N. Y. 216, 121 N. E. 777, and Ottumwa v. City of Ottumwa (Iowa) 178 N. W. 905.

In discussing the questions involved in the instant case, Freund, in his Police Powers (6th Ed.) refers to the fact that the police rate-making power cannot be contracted away or abridged in any respect in the states of Louisiana, Missouri, California, Mississippi, Montana, and Pennsylvania because of constitutional inhibitions. And I think that the Black Case recognizes such interpretation of section 263 of the Constitution of Louisiana.

There is in the Constitution of Missouri a provision in the identical language of article 263, and in construing this limitation in State v. Public Service Commission, 275 Mo. 201, 204 S. W. 497, the Supreme Court of that state said:

" * * * It was under similar definitions of 'police power' that this court held that the fixing of reasonable rates for public service is the exercise of the sovereign police power of the state. Such power cannot be contracted away, nor can the Legislature of the state authorize a municipal corporation to contract away this police power of the state. It is clear that the Legislature cannot confer more power upon one of its creatures (a municipal corporation) than it possesses itself. The Legislature is prohibited by the Constitution from abridging the police power of the state. It cannot legally authorize any creature of the Legislature to abridge this sovereign power. So that we care not what the literal meaning of section 9239, R. S. 1909, may be. If it be construed so as to abridge or limit the exercise of the sovereign police power of the state, the Legislature overstepped constitutional limitations in enacting it. If it be construed as simply authorizing a contract until such time as the state saw fit to assert its police power, as it did in the Public Service Commission Act, then it would be at least harmless in the instant."

The Supreme Court of Louisiana has said that the police power of the state is inalienable. Railroad Co. v. City of N. O., 44 La. Ann. 748, 11 South. 77; Capdevielle v. N. O. R. Co., 110 La. 918, 34 South. 868. In its charter the city of New Orleans is given the power to grant franchises to street railways and to regulate the same. But the limitation of the Constitution of the state forbids the Legislature to abridge or alienate the police power of the state as I have undertaken to show; and a fortiori a municipal corporation, though vested with police powers, cannot abridge or alienate those powers.

Of course, this case being one arising under the laws of Louisiana, the settled interpretation of these laws by the highest court of the state should be followed by the federal court. The Louisiana constitutional inhibition against the abridgment of the police power is equivalent to the limitation found in the Constitution of Texas (section 17, article 1), prohibiting "any irrevocable or uncontrollable grant of special privileges," etc. In City of San Antonio v. San Antonio Pub. Ser. Co. (October term, 1920) 255 U. S. ——, 41 Sup. Ct. 428, 65 L. Ed. ——, where the city ordinance had fixed a five-cent rate of fare, and it was assailed in the case, the Supreme Court, in affirming the judgment of the District Court (257 Fed. 467), said:

"That in view of the admitted fact of confiscation the court had power to deal with the subject we are of opinion is too clear for anything but statement. And we think it is equally clear that, as the right to regulate gave no power whatever to violate the Constitution by enforcing a confiscatory rate, a result which could only be sustained as a consequence of the duty to pay such rate arising from the obligations of a contract, it follows that the solitary question to be considered is whether a contract existed empowering the city to enforce the confiscatory rate.

"Primarily the answer to that question must depend upon whether the ordinance of 1899 fixing the five cents rate was a contract. That it was not, and could not be, we are of opinion is the necessary result of the provision of section 17, article 1, of the state Constitution, existing in 1899, prohibiting 'any irrevocable or uncontrollable grant of special privileges,' etc., when considered in the light of the irrevocable and uncontrollable elements which must necessarily inhere in the ordinance of 1899 to give it the contract consequence relied upon. Indeed, this result is persuasively established by the ruling in the Altgelt Case, to the effect that, if the contract right were conceded, there would, in view of the constitutional restriction, be such an inevitable conflict between that right and the dominant power to regulate as to render the contract right inoperative, and therefore to cause it to perish from the mere fact of admitting its conflict with the authority to regulate."

And again in the same case it is said:

"The bold contrast between the ordinance referred to and the statement made by the city in the ordinance refusing the increase in rate to meet the confiscation, because of the assumed restraint put by an existing contract, tends to throw abundant light on the situation. The fact is that all the contentions of the city as to implication of contract as to the 1899 rates but illustrate the plainly erroneous theory upon which the entire argument for the city proceeds; that is, that limitations by contract upon the power of government to regulate the rates to be charged by a public service corporation are to be implied for the purpose of sustaining the confiscation of private property. Home Telephone Co. v. Los Angeles, 211 U. S. 265, 273, 39 Sup. Ct. 50, 53 L. Ed. 176, and cases cited; Milwaukee Electric Railway Co. v. Wisconsin R. R. Commission, 238 U. S. 174, 180, 35 Sup. Ct. 820, 59 L. Ed. 1254."

If the authorities cited and quoted from leave any doubt as to my duty to issue the injunction in this case, I think the decision of the Supreme Court in Southern Iowa Elec. Co. v. City of Chariton (decided April 11, 1921) 255 U. S. ——, 41 Sup. Ct. 400, 65 L. Ed. ——, is conclusive of the question and compelling upon me. There, by ordinance, franchises were granted to build and operate street railways in the city, and the ordinance stipulated a schedule and maximum passenger fare rate, just as the franchise ordinance in the instant case provided, and the Supreme Court, by Chief Justice White, said:

"Two propositions are indisputable: (a) That although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014 [other cases are cited]. And (b) that where, however, the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract and therefore the question of whether such rates are confiscatory becomes immaterial. Freeport Water. Co. v. Freeport, 180 U. S. 587, 593, 21 Sup. Ct. 493, 45 L. Ed. 679 [other cases are cited]. It follows that, as the rates here involved are conceded to be confiscatory, they cannot be enforced, unless they are secured by a contract obligation. The existence of a binding contract as to the rates upon which the lower court based its conclusion is therefore the single issue upon which the controversy depends. Its solution turns, first, upon the question of the power of the parties to contract on the subject; and, second, if they had such power, whether they exercised it."

The court then proceeds to examine the Iowa statute and to determine whether under this law the public service corporation has this contractual power, and quoted from Ottumwa R. & L. Co. v. City of Ottumwa (Iowa) 178 N. W. 905, to this effect:

"That statute in positive terms forbids any abridgment of the right to regulate and fix charges of service corporations named in the statute, either by ordinance, resolution, or contract. No one would now contend, in the teeth of the statute prohibition, that there can be a valid contract fixing permanent rates. As to corporations named in that statute, we have held repeatedly that there can be no contracting that rates fixed for service shall not be changed."

And then the court concludes by saying:

"The total want of power of the municipalities here in question to contract for rates, which is thus established, and the state public policy upon which the prohibition against the existence of such authority rests, absolutely exclude the existence of the right to enforce, as the result of the obligation of a contract, the concededly confiscatory rates which are involved, and therefore conclusively demonstrate the error committed below in enforcing such rates upon the theory of the existence of contract. And, indeed, the necessity for this conclusion becomes doubly manifest when it is borne in mind that the right here asserted to contract in derogation of the state law and of the rule of public policy announced by the court of last resort of the state is urged by municipal corporations whose every power depends upon the state law. Covington v. Kentucky, 173 U. S. 231, 241, 19 Sup. Ct. 383, 43 L. Ed. 679. [Other cases are cited.]"

Of course that the limitation of the power of the city to contract was imposed by statute rather than by the state Constitution did not

militate against the application of the principle in the Iowa case, nor could it do so in the present case, if it were a mere statutory and not a high constitutional provision.

In the argument the case of Columbus Ry. & P. Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648, was cited by the attorneys for the defendants. I think it sufficient to say that it has no application to the case now under consideration. There the city had, under authority of certain laws of Ohio, contracts binding on the grantees to furnish street railway service for 25 years at a specified rate in return for the use of the streets, and not permissive franchises which the grantees might surrender when they ceased to be remunerative. There was a clear contract obligation, and there was no limitation upon the power to make the contract. In the San Antonio Case and in the Chariton Case, as well as in the instant case, there were limitations upon the contractual power.

Primarily the fixing of rates is an administrative function; but when the rates are fixed, and they are alleged to be confiscatory, then a judicial question is presented. Here the rates have been fixed by the city commission authorized so to do, and these rates are alleged to be confiscatory. This allegation is not denied. On the contrary, the city insists upon its right to enforce the rates according to the franchise contracts, even to the extent of putting into effect a five-cent passenger car fare rate as provided in such contract. The insistence, in effect, is that the contracts are inviolable, although they may be confiscatory. I think such position is unsound. What rate of passenger fare is or is not confiscatory can be determined after the answer comes in and the cause is heard on its merits.

Order for injunction as prayed for in the bill will be entered.