# CITY WATER COMPANY OF SEDALIA v. CITY OF SEDALIA, Appellant.

### Division Two, June 23, 1921.

1. **PUBLIC UTILITY: Contract With City: Rates Modified by State.** A contract between a city and a water company for the supply of water to the city and its inhabitants at given rates is always subject to modification by the paramount authority of the State, and when the Public Service Commission, in pursuance to statutory authority, modifies the contract by establishing higher rates, the contract is not thereby abrogated, but as modified it continues binding and obligatory upon both parties.

2. ———: ———: ———: **Elimination of Useless Hydrants.** A request by the city, made at a hearing before the Public Service Commission in a proceeding brought by a water company for an increase in the contract rates for supplying water to the city and its inhabitants, that 87 fire hydrants, mentioned in the contract, be eliminated from the contract and their use discontinued, on the ground that the city had no further use for them. is not for consideration in a suit by the company for unpaid hydrant rentals, if no action was taken by the city or the company or the Commission on such request.

3. ———: ———: ———: **In Excess of Annual Revenue: Must Be Pleaded.** The issue that the hydrant rental as fixed by the Public Service Commission will result in increasing the indebtedness of the city in one or more years to a sum in excess of the revenue provided for such years and limited by the Constitution, must be pleaded in the answer to the suit by the water company for unpaid rentals, and cannot be raised for the first time in the motion for a new trial.

4. ———: **Contract Abrogated by Commission: Excessive Rates: Issue Confined to Pleadings.** Where in a suit by a water company for unpaid hydrant rentals, the city admitted the execution of the contract sued on, but pleaded, as the sole defense, that the contract had been abrogated by the Commission in increasing the rentals above the contract rates, the plaintiff is not required to offer evidence on an issue outside of the pleadings, and is not required to prove that the indebtedness of the city, if

it were compelled to pay the increased rates, would not exceed the revenue provided for the year.

5. **APPEAL: Res Adjudicata: Vexatious Delay.** Although the questions raised on the appeal are *res adjudicata*, the appeal is not necessarily vexatious and for delay.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*Wilkerson & Barnett* and *R. S. Robertson* for appellant.

(1) The judgment upon the counts complained of is for services and water which the city had contracted to receive from the plaintiff, but the amount of recovery is based upon a rate fixed by the Public Service Commission in excess of the rate fixed by the contract. The contract rate was the consideration of the original contract, and when the rate was abrogated by the Public Service Commission in the exercise of the superior or police power of the State, not only the consideration of the contract but the contract itself was thereby abrogated. (2) The order of the Public Service Commission did not modify the original contract. Contracts can only be modified by the mutual consent of the parties to the contract. 13 C. J. 591. (3) The Public Service Commission represents the State so far as the Legislature represents the State and, therefore, the Public Service Commission, as the arm of the Legislature, can fix a public service rate, and thereby abrogate contracts inconsistent with the rates in the exercise of the police power which is in the Legislature. State ex rel. Sedalia v. Public Service Comm., 204 S. W. 497. (4) The fixing of a rate for a public service does not regulate the affairs of the city, because they may purchase at the reasonable rate as fixed by the State, or they may refrain from purchasing if in the judgment of local authorities the money is

needed elsewhere, or if the constitutional limit of taxation has already been reached, or if the local authorities desire to lower taxes. But the Legislature cannot itself, nor through its representative, the Public Service Commission, create both a rate and a contract applicable only to the city, because the Constitution provides: "The General Assembly shall not pass any local or special law . . . (2) regulating the affairs of counties, cities, townships, wards, or school districts . . . (3) In all other cases where a general law can be made applicable no local or special law can be enacted. . . . Nor shall the General Assembly indirectly enact such special or local law by the repeal of a general law." Sec. 53, Art. IV, Mo. Constitution. (5) The Public Service Commission could not make a contract requiring the city to expend money over a period of years, nor could it modify a contract requiring the city to expend more money than the local authorities had agreed upon for a period of years, because this extra expenditure can only be paid by taxation, and the Constitution provides that the General Assembly shall not impose taxes upon counties, cities, townships, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for special purposes. Section 10, Art. X, Mo. Constitution. (6) And it also provided that the taxing power may be exercised by the General Assembly for state purposes, but shall be exercised by counties and other municipal corporations for county and other corporate purposes. Section 1; Article X, Mo. Constitution. (7) The city cannot impose taxes to meet the amount of its expenditures, however great, in excess of constitutional limitation, but must keep within the maximum provided by the Constitution. Section 11, Article X, Mo. Constitution. No city shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and

revenue provided for that year. Section 12, Article X, Mo. Constitution. The incurring of indebtedness by a city beyond the revenue provided for that city is absolutely and unqualifiedly prohibited, no matter what the necessity or pretext may be, or the form which the indebtedness assumes. State v. Neosho, 203 Mo. 40. (8) The burden was upon plaintiff to show that the indebtedness ' incurred by the so-called contract did not exceed the constitutional limitation provided in Section 12 of Article X of the Constitution, in that it did not exceed the revenues provided for that year; and plaintiff having failed to prove that the indebtedness created did not so exceed the revenue provided for the years in question, the judgment should have been for defendant. Thornburg v. School District, 175 Mo. 12. (9) Even if the evidence had affirmatively shown that the old contract with the water company, if enforced upon the new rate created by the Public Service Commission, would not actually exceed the constitutional limitation upon city indebtedness, yet the Public Service Commission is prohibited by Section 12 of Article X of the Constitution from modifying contracts and increasing expenditures thereunder, because if such power were in the Public Service Commission, they could create an indebtedness in excess of the constitutional limitation. The question of constitutional power depends not upon what was done in a particular case, but upon what was authorized to be done. People v. Marquis, 291 Ill. 121.

*J. H. Bothwell* and *Montgomery & Rucker* for respondent.

(1) In earlier cases between this appellant and this respondent, the Supreme Court fully sustained and confirmed the authority of the Public Service Commission to modify the contract rate for fire hydrants maintained in the City of Sedalia by this respondent, and in the increased rate for fire-hydrant rentals has been ap-

proved by this court and sustained by the United States Supreme Court. State ex rel. Sedalia v. Public Service Comm., 275 Mo. 201, 251 U. S. 547. (2) The change of rate and increase of rentals for fire hydrants under the said contract authorized by the Public Service Commission did not abrogate or annul the contract between the city and the water company, but such change was effective in modifying the contract only to the extent of such increase of the rental rates. State ex rel. Sedalia v. Public Service Commission, 275 Mo. 201; Salt Lake City v. Utah Light & Traction Co., 3 A. L. R. Annotated, 715; Robertson v. Wilmington and P. Traction Co., 104 Atl. 839; Portland v. Public Service Comm., 173 Pac. 1178. (3) The question as to the authority and power of the Public Service Commission to charge an increase in the rental rates for fire-hydrants installed and maintained at Sedalia has become *res adjudicata* between the appellant and the respondent and the legality of such increase of rates cannot be again attacked in this case. (4) A constitutional question is one of such grave importance that it must be raised at the first opportunity. If it can be appropriately and naturally raised in the pleadings and thereby be a question lodged in the record proper, such is the true place to raise it. If not there raised it is waived. Pickel v. Pickel, 243 Mo. 654; Lohmeyer v. Cordridge Co., 214 Mo. 689; Hartzler v. Met. St. Ry. Co., 218 Mo. 562. The petition was upon the franchise-contract as modified by the orders of the Public Service Commission. If this theory of the legal effect of the order of the Public Service Commission changing the rates, was open to all of the grave constitutional objections now being urged by the respondent, the natural and appropriate place to raise such constitutional objection was in the defendant's answer and not in the motion for new trial or the "Assignments of Errors." (5) There was no evidence offered to show that the city ever had asked for or offered any reduction in the number of fire-hydrants to be installed and maintained

by the respondent at Sedalia, and the mere statement of the city's attorney that 87 of the fire hydrants were not needed, with no action by the city council and mayor and no acquiescence of the water company or approval of the Public Service Commission, did not result in withdrawing any of the fire hydrants from use under the contract.

HIGBEE, P. J.—The petition alleges, in substance, that the plaintiff is a corporation engaged in furnishing water to the City of Sedalia, a city of the third class, and its inhabitants; that on August 6, 1906, said city adopted an ordinance by which it was provided that the Sedalia Water Company, its successors and assigns, should supply water to said city and its inhabitants and, among other things, should install and maintain all necessary machinery, apparatus, reservoirs, basins, water mains, pipe lines, etc., and said city agreed to rent 198 fire hydrants as then located on the pipe system of said water company, and such additional fire hydrants as said city might order to be installed for the term of said contract, at an annual rental of $30 for each fire hydrant, payable in semi-annual installments on February 1st and August 1st of each year, and that said ordinance was accepted by said water company on August 29, 1906; that plaintiff became the successor of said water company, and owner and operator of the water works system thereof; that on October 29, 1914, plaintiff applied to the Public Service Commission of this State for an increase of its rates for water service; that defendant intervened, and that such proceedings were had that on April 3, 1916, said Commission made an order finding that the rates and charges aforesaid did not afford a reasonable return on plaintiff's investment, and plaintiff filed a new schedule increasing the rental of fire hydrants to $45 per hydrant, which was approved and became effective August 1, 1916; that thereafter, on like proceedings, the rate was increased to $55 per

hydrant, effective January 1, 1920; that after August 29, 1906, on the order of the city, 46 additional fire hydrants were installed; that in the years 1916 and 1917, seven additional fire hydrants were installed on the order of the defendant.

The petition, in separate counts, pleads the semi-annual installments severally accruing; that defendant paid thereon at the rate of $30 per year for each hydrant, and in each count plaintiff prayed judgment for the unpaid balance, with interest.

The answer admits the various allegations of the petition, and pleads that the orders of the Commission increasing the rentals of the hydrants abrogated the contract and that until a new contract was made defendant was liable for such fire hydrants as it might use at the original contract price. It further avers that on December 16, 1918, at a hearing before the commission, plaintiff asked permission to discontinue fire hydrant service to the city, because of its refusal to pay the increased rentals, and that at said hearing the defendant insisted that said original contract was in full force, but if the commission or plaintiff did not wish to continue to operate under said contract, the city had been and was then paying for 87 designated hydrants for which it had no use, and which it was willing for plaintiff to eliminate and discontinue. It also averred that plaintiff waived its contract with the city when it made application for a change of rates, and that defendant is only liable to plaintiff for hydrants actually ordered and used after the orders of the Commission increasing the rates were made.

The reply denied all the allegations of the answer, and averred that the orders of the Commission changing the rates for fire hydrant rentals had only the effect of modifying the contract, and that said modified contract is still binding and obligatory upon the parties.

On the trial, before the court without a jury, the plaintiff read in evidence an itemized statement of the rentals according to the increased rates as they severally became

due, credited with payments at the original contract rates, showing the balances claimed to be due on each installment, with the accrued interest. The defendant read in evidence the report of the Commission on its investigation and valuation of plaintiff's property, and its order approving the schedule of increased rates for the rental of the fire hydrants, and the list of the 87 hydrants filed with the Commission, which might be eliminated. This was all the evidence. There were no instructions asked or given. The finding and judgment were for the plaintiff for the sums claimed in the several counts of the petition, with interest. Motion for new trial having been overruled, the defendant appealed.

Appellant assigns as error: (1) that the court erred in holding that the Commission had power to make or modify a contract on behalf of the city; (2) that the court erred in not holding that the burden of proof was on the plaintiff to show that the contract was not for an expenditure in excess of the income and revenue of the city in any year provided for such year, within the meaning of Section 12 of Article 10 of the Constitution; (3) because there was no evidence that the expenditure and indebtedness provided for under the contract under the increased rates was not to an amount exceeding, in any year, the income and revenue provided for such year; (4) because the court erred in holding that the Commission had power to so modify the contract as to make it necessary for the city to fund its indebtedness and to provide taxation therefor in contravention of Sections 1 and 10 of Article 10 of the Constitution; (5) because, if any liability was shown, it was on a *quantum meruit* and not on a contract; and (6) because the judgment appropriates the city revenue without any act of the city or city council, contrary to the provisions of Section 9227, Revised Statues 1919.

When the new schedules of rates were approved by the Commission, the city, by statutory *certiorari*, took the matter to the Circuit Court of Cole County for review, where the reasonableness of the rates fixed by the Com-

mission was approved. On appeal to this court the judg-
ment was affirmed. [State ex rel. City of Sedalia v. Pub.
Serv. Comm., 275 Mo. 201.] The case was then taken on
writ of error to the Federal Supreme Court (251 U. S.
547), where the writ was dismissed for want of jurisdic-
tion, upon the authority of Pawhuska v. Pawhuska Oil
Co., 250 U. S. 394.

 I. The very questions raised on this record were
thoroughly considered by GRAVES, J., in State ex rel.
<span style="float:left">Modification<br>of Water<br>Rates.</span> Sedalia v. Pub. Serv. Comm., supra, in an
elaborate opinion concurred in by all the
members of Division One. At the top of page·
206, it is said:

"Under the facts of the record, the reasonableness
of the rates fixed by the Public Service Commission can-
not be seriously questioned. This leaves the single ques-
tion as to whether or not the Public Service Commission
had the lawful right to fix a rate, so far as the city is
concerned, in excess of the ordinance rate. Such is the
case when cleared of all driftwood."

Referring to the Public Service Commission Act of
1913, the learned opinion quotes from State ex inf. v.
Kansas City Gas Co., 254 Mo. l. c. 534:

"That act is an elaborate law bottomed on the police
power. It evidences a public policy hammered out on
the anvil of public discussion. It apparently recognizes
certain generally accepted economic principles and con-
ditions, to-wit, that a public utility (like gas, water, car
service, etc.) is in its nature a monopoly; that com-
petition is inadequate to protect the public and, if it
exists, is likely to become an economic waste; that State
regulation takes the place of and stands for competition;
that such regulation, to command respect from patron or
utility owner, must be in the name of the overlord, the
State, and to be effective must possess the power of in-
telligent visitation and the plenary supervision of every
business feature to be finally (however invisibly) re-

flected in rates and quality of service. It recognizes that every expenditure, every dereliction, every share of stock or bond or note issued as surety is finally reflected in rates and quality of service to the public, as does the moisture which arises in the atmosphere finally descend in rain upon the just and unjust *willy nilly.*"

The opinion concludes:

"It is, however, clear that under our Section 5 of Article 12 of the Constitution of 1875 (a section not heretofore found in our Constitution) the Legislature itself cannot abridge the police power of the State. Nor can .it authorize a municipal corporation to make a contract abridging or limiting such police power. So that if, as we have held, the fixing of rates for public service is an exercise of the police power, then under other rulings cited above, the Public Service Commission had a right to fix reasonable rates irrespective of the alleged contract. The great weight of authority so holds. Cases from a great number of states will be found in the briefs for the Public Service Commission. These discuss the question from different angles, but reach the same conclusion. We have preferred to rest the ruling in this case upon what this court has previously ruled, which rulings have been in the light of our own peculiar constitutional provision. Under it the sovereign police power of the State is preserved intact, irrespective of contracts with reference to rates for public service. Under it no contract as to rates will stand as against the order of the Public Service Commission for reasonable rates, whether such reasonable rates be lower or higher than the contract rate. Under the Constitution and the Public Service Commission Act, the Public Service Commission (supervised by the courts as to the reasonableness of rates) is exercising the police power of the State by its delegated authority from the Legislature. Its rates therefore constitutionally and legally supersede any and all contract rates. Other theories of case law need not be noted."

In Pawhuska v. Pawhuska Oil Company, supra, the city granted a franchise to the oil company which provided that it should have its pipe lines in the streets and that it should furnish the city and its inhabitants with gas at flat or meter rates at the option of the consumers, and that the rates should not be in excess of fixed standards. Under the Act of 1913, it was provided that the corporate commission of the State shall have general supervision over all public utilities, with power to fix and establish rates, and to prescribe rules, requirements and regulations affecting their service. The Commission, after a hearing, made an order which recites that the evidence disclosed that the franchise rates had become inadequate and unremunerative and that supplying gas at flat rates was productive of wasteful use. The order abrogates all flat rates, increases the meter rates and requires that the gas be sold through meters to be supplied and installed at the company's expense. On appeal by the city, the Supreme Court of the State affirmed the order. [166 Pac. 1058.] A writ of error was issued by the Federal Supreme Court to review this judgment. In the course of his opinion, at page 399, Mr. Justice VAN DEVANTER quoted from the opinion in New Orleans v. New Orleans Water Works Co., 142 U. S. 79, as follows:

"In this case the city has no more right to claim immunity for its contract with the Water Company, than it would have had if such contract had been made directly with the State. The State, having authorized such contract, might revoke or modify it at its pleasure."

In Woodburn v. Pub. Serv. Comm., 82 Ore. 114, L. R. A. 1917C, 98, 161 Pac. 391, it is said:

"When Woodburn granted the franchise to the telephone company, the city exercised its municipal right to contract, and it may be assumed that the franchise was valid and binding upon both parties until such time as the State chose to speak; but the city entered into the contract subject to the reserved right of the State

to employ its police power and compel a change of rates, and when the State did speak, the municipal power gave way to the sovereign power of the State." See Salt Lake City v. Utah Light & T. Co., 173 Pac. 556, 3 A. L. R. 715.

II. The rule thus established is that every contract between cities of this State and a public utility is always subject to modification by the paramount power of the State, and when a change is so made it is binding upon the city, the change having been made Continued by the State as the representative of the city. Contracts. Hence it follows that the contention that the increase in the rates of the hydrant rentals abrogated the contract is untenable. The contract, as modified by the Commission, is binding and obligatory upon both parties until such time as the Commission may determine to reopen the case.

III. The defendant offered in evidence a list of 87 fire hydrants which it claimed should be eliminated. No action was taken by the city, the water company or the Useless Commission on this offer. Hence the matter Hydrants. is not before us.

IV. The other assignments of error are not here for consideration on this record. They were not pleaded in the defendant's answer. They were first raised in the motion for new trial. It may be that the ac-Rates in tion of the Commission in raising the annual Excess of Revenue. rental of the fire hydrants from $30 to $55 each would result in increasing the indebtedness of the city in one or more years to a sum in excess of the revenue provided for such years. If that be true, the natural and appropriate place to raise such a constitutional question was in the defendant's answer and not in the motion for new trial.

V. The answer admitted the execution of the contract sued upon, that is, that it was legally executed,

but pleaded that it had been abrogated by the action of the Commission in increasing the rental rates without the consent of the city. That was the sole defense. The rule announced in Thornburg v. School District, 175 Mo. 12, has no application. The action in that case was upon certain bonds which plaintiff alleged had been issued by the school district. The answer admitted that the bonds were issued by the persons then holding the position of directors of the district, but averred that their issue was not authorized by an election as required by law, and that the aggregate amount of the bonds so issued exceeded five per centum of the value of the taxable property of the district; consequently the bonds were invalid. On the issue so tendered by the answer, it was held that the burden was on the plaintiff to prove that the requirements of the law had been complied with in the issue of the bonds. It is obvious that the rule invoked has no application to this case. Plaintiff was not required to offer evidence on an issue not made by the pleadings.

VI. The questions raised on this appeal were *res adjudicata,* but that the appeal was, therefore, vexatious and for delay is a *non sequitur.* Cases are not wanting in which this court has been set right on a second appeal in the same case. [Bagnell Timber Co. v. Railway, 242 Mo. 11, overruling S. C. 180 Mo. 420; Hamilton v. Marks, 63 Mo. 167, overruling S. C. 52 Mo. 78; Murphy v. Barron, 275 Mo. 282, 228 S. W. 492.] We are not persuaded that this appeal was for vexation or delay, or that the taxpayers of the City of Sedalia should be penalized as for a vexations appeal.

The judgment is affirmed. All concur except *D. E. Blair, J.,* not sitting.