Ex Parte VICTOR PACKMAN, Petitioner.—296 S. W. 366.

Court en Banc, June 27, 1927.

**1. STREET RAILWAY FARES: Regulation: Ordinances.** The power to supervise the rates, fares or charges exacted by a street-railway corporation for the transportation of persons, and the regulations or practices of such a corporation affecting rates, rests exclusively with the Public Service Commission (Sec. 10456, R. S. 1919), and provisions of the charter of the city of St. Louis purporting to confer such power on the city or its board of alderman are void; and ordinances in conflict with the statute, whether enacted pursuant to charter provisions or not, are likewise void.

**2. ———: ———: Transfer Tickets: Power of City: Prescribing Penalties.** An ordinance which attempts to prescribe the use that may be made of transfer street-car tickets, without any reference to the rates and regulations of the Public Service Commission, invades the province of the Commission, for the city is without power to regulate to any extent, directly or indirectly, the rates of a public utility, or to prescribe regulations or practices affecting such rates; it only has power by ordinance to prohibit the issuance or use of a transfer ticket which violates the rules and regulations of the street-car company which have met the approval of the Public Service Commission, and to prescribe penalties which will compel individuals composing the public in their dealings with the utility to observe the rules and regulations affecting rates which have been prescribed by or met the approval of the Commission.

3. ———: ———: ———: **Ordinances Ignoring State Regulation: Conviction and Punishment.** Ordinances of the city of St. Louis which completely ignore the schedule of rates of a street-car company on file with and approved by the Public Service Commission, and make it unlawful for any person to sell or buy a transfer ticket, are void, and a person convicted of violating them is entitled to his discharge.

---

Corpus Juris-Cyc. References: Municipal Corporation's, 43 C. J., Section 219, p. 216, n. 16; Section 220, p. 218, n. 32.

*Habeas Corpus.*

Petitioner discharged.

*Jesse E. Bishop* and *Victor Packman* for petitioner.

(1) No ordinance of the city of St. Louis is valid unless authority for the passage of same is expressly provided for in the charter of the city, or is a necessary implication of the city's police power. St. Louis v. Kaine, 180 Mo. 309; City of St. Louis v. Atlantic Quarry & Construction Co., 244 Mo. 479. (2) There is no express authority for the passage of Sections 1098 and 1099 of Ordinance 30013 of the Revised Ordinances of the City of St. Louis 1914. (3) All ordinances of the city of St. Louis must be in harmony with and subject to the laws and Constitution of the State. Art. IX, Sec. 23, Constitution of Missouri. (4) Sections 1098 and 1099 of Ordinance 30013 are in conflict with, and not in harmony with, the exclusive powers of the State and the State Public Service Commission. State v. Public Service Commission, 270 Mo. 429; Sec. 10456, part 5, R. S. 1919; St. Louis v. Public Service Commission, 276 Mo. 509, 527; State v. Public Service Commission, 275 Mo. 201.

*Julius T. Muench* and *Oliver Senti* for respondent.

(1) The Public Service Commission Act was not intended to prevent cities from exercising their police powers in the interest of the public health, safety, morals or welfare. (2) The charter of the city is its organic law. All ordinances enacted pursuant thereto are valid unless they violate the Constitution or are in conflict with the laws of the State. Constitution of Missouri, Art. IX, secs. 22, 23. (3) Wherever a charter authorizes a thing to be done, and an ordinance undertakes to carry out the powers granted by the charter, the ordinance will be liberally construed, with a view to sustaining its validity. State v. Butler, 178 Mo. 272. (4) It is the duty of

courts to resolve all doubts in favor of the validity of a legislative act, and they are reluctant to declare such act invalid. State ex rel. v. Shehan, 269 Mo. 427; Bledsoe v. Stallard, 250 Mo. 154; State v. Layton, 160 Mo. 474; Wagner v. St. Louis, 284 Mo. 411. (5) The courts will indulge in the presumption that the Legislature did not intend to violate the organic law of the State. State ex rel. v. Shehan, 209 Mo. 427. The courts will have the same reluctance to declare an ordinance, duly enacted, void, and the same presumption as to its validity obtains. State v. Murta, 283 Mo. 81.

RAGLAND, J.—*Habeas corpus.* The petitioner was convicted in the Court of Criminal Correction in the City of St. Louis of having theretofore, on August 24, 1926, violated Section 1098 of Ordinance No. 30013, in that he had sold to one Bishop for a consideration, namely, lawful money, a street railway transfer ticket issued by the United Railways Company, a corporation operating street railways within the city of St. Louis, which transfer ticket purported to give the holder thereof the right to transfer without the payment of additional fare from one car to another, to-wit, a transfer from the Olive Street car line to the Bellefontaine Street line. He was thereupon adjudged to pay a fine of $10, and the costs of the proceeding; not having satisfied said judgment, he is now detained and imprisoned by the respondent, the Sheriff of the City of St. Louis. He asserts that his imprisonment is unlawful because the ordinance provisions which he was convicted of violating are "void, illegal and of no force or effect." The validity of the ordinance is therefore the only question presented for determination.

The section in question and the succeeding one are as follows:

"Section 1098, It shall be unlawful for any person:

"First. To sell, barter or exchange for any consideration whatsoever, any street railway transfer ticket or other instrument issued by any person or corporation operating any street railway within the city of St. Louis, giving or purporting to give to the holder of such transfer ticket or other instrument the right to transfer, without the payment of additional fare, from one car to another car on the same line or route, or from one line or route to the car or cars operated upon another line or route.

"Second. Or for any person to give away any such transfer ticket or other instrument as aforesaid to another for the purpose of enabling or with intent to enable, the latter to use or offer the same for passage upon any street railway car or cars.

"Third. Or for any person to whom or for whom any such transfer ticket or other instrument as aforesaid was not issued, to use, or attempt to use, or offer the same for passage upon any street railway car or cars.

"Fourth. Or for any person to counterfeit any such transfer.

"Fifth. Or for any person to punch or alter or change the punching of any such transfer.

"Sixth. Or for any person knowingly to make or attempt to make a round trip by use of such transfer.

"Provided, however, that nothing in this ordinance relates to nor in any manner affects the issuing of transfers by the agents or employees of any person or corporation operating a street railway to passengers thereof lawfully entitled thereto.

"Section 1099. Any person who shall violate any provision of this ordinance shall be guilty of a misdemeanor, and upon conviction thereof, shall be subject to a fine of not less than five dollars."

The validity of the ordinance is challenged on a number of grounds. One of these, namely, the ordinance is in conflict with the Public Service Commission Law, we regard as substantial. As the others, where not wholly fanciful, take life from this one, they need not be considered.

The street railway transfer ticket referred to in the ordinance is presumably one issued to enable a passenger, for a single fare, to make a continuous trip from one point in the city to another where the trip must be completed on a line different from, but connecting with, the one on which it was begun. The rules and regulations governing the issuance and use of such tickets therefore enter into and form in part the basis of the rates charged by the street-car company for its transportation service. In other words, such rules and regulations are integral parts of its schedule of rates. Now the power to supervise the rates, fares or charges exacted by a street-railway corporation for the transportation of persons, and the regulations or practices of such corporation affecting rates, rests exclusively with the Public Service Commission. [Sec. 10456, R. S. 1919.] Consequently the provisions of the charter of St. Louis purporting to confer such power on it or its board of aldermen are void. [State ex rel. v. Public Service Commission, 270 Mo. 429.] And ordinances in conflict with the Public Service Commission Law, whether enacted pursuant to charter provisions or not, are likewise void.

The ordinance entirely ignores the schedule of rates of the street-car company (there is but one operating in St. Louis) on file with and approved by the Public Service Commission. It declares in effect that regardless of such schedule no person other than the one to whom it is issued shall use a transfer ticket. Whereas, the rates of the company may be on a basis which contemplates that for a single fare there will be furnished a unit of transportation service, consisting of a conveyance within a limited time of one person from one point in the city to another over such of its connecting lines as may be necessary, regardless of whether the same individual is the subject of the transportation throughout. In other words, under its schedule

of rates and the rules and regulations issued in connection therewith, transfer tickets issued by it may be transferable. Or they may be transferable to certain persons, as for example, the servant or employee, or a member of the family, of the person to whom issued. If such tickets are not transferable now, they may at any time be made so by the street car company with the approval of the Public Service Commission, or the latter may require them to be made transferable if after notice and hearing it finds that that is a just and reasonable regulation as affecting the rates charged. And this can be done without let or hindrance on the part of the city of St. Louis. The trouble with the ordinance is that it attempts to prescribe the use that may be made of transfer tickets and thereby invades the province of the Public Service Commission. It will not do to say that the ordinance in prescribing the use which may be made of transfer tickets is not, or may not be, in conflict with the orders of the Public Service Commission relating thereto. The question is one of power. The city of St. Louis is without the power to regulate to any extent, directly or indirectly, the rates of a public utility, or to prescribe regulations or practices which affect such rates. But while it cannot exert any measure of control over the rates and charges of a utility, it can no doubt, because of the public interest at stake in the maintenance of just, reasonable and non-discriminatory rates, require under penalty that the individuals composing the public shall in their dealings with the utility observe its rules and regulations affecting rates. This, however, is the limit of its power in that respect. If, therefore, the ordinance merely prohibited an issuance or use of transfer tickets which violates the rules and regulations of the street-car company (which would presumably have the approval of the Public Service Commission), the question of its invalidity on the ground of conflict with the State law could be wholly eliminated.

For the reasons indicated the ordinance, or at least paragraphs "First," "Second," "Third" and "Sixth" of said Section 1098, are void. It follows that the petitioner must be discharged. It is so ordered. All concur.