THE STATE EX REL. KANSAS CITY PUBLIC SERVICE COMPANY v. RALPH S. LATSHAW, Judge of Circuit Court.—30 S. W. (2d) 105.

Court en Banc, July 8, 1930.

*Robert W. Otto, Charles M. Howell, Richard J. Higgins, Henry N. Ess, Charles L. Carr* and *Powell C. Groner* for relator; *D. D. Mc-Donald* and *J. P. Painter* of counsel.

*John T. Barker, Marcy K. Brown, Jr.,* and *William H. Allen* for respondent.

FRANK, J.—Original proceeding in prohibition. Relator, Kansas City Public Service Company, is a public utility corporation and owns and operates a street railway system in Kansas City, Missouri. On February 11, 1929, said utility filed an application for increase in rates with the Public Service Commission. On March 11, 1929, preparatory to a hearing on said application, the Commission ordered its engineers to make an appraisal of the property and its accountants to make an audit of the books of said utility. On April 11, 1929, Kansas City intervened and filed answer in the proceedings before the Commission. Thereafter on June 26, 1929, Kansas City, as plaintiff, filed a suit in the Circuit Court of Jackson County, before Honorable Ralph S. Latshaw, judge of said circuit court, against the Kansas City Public Service Company and the Public Service Commission, in which it sought an injunction against said Public Service Company and the Public Service Commission restraining and enjoining the Service Company from further prosecuting its application for increase in rates, and enjoining the Public Service Commission from further entertaining said application or taking any further steps in relation thereto. A temporary restraining order was issued pending the final hearing of the case. Thereafter relator petitioned this court for a writ of prohibition, seeking to prohibit respondent, as judge of said circuit court, from taking further cognizance of said suit and asking that the temporary restraining order theretofore issued in said cause be annulled and set aside. Our preliminary rule issued directing respondent, as judge of said court, to take no further steps in the cause pending before him, except that he set aside the temporary restraining order theretofore issued by him and commanding him to appear before the court on August 12, 1929, and show cause why a writ of prohibition should not issue as prayed. Respondent made return to our preliminary rule, and relator then filed a motion for judgment on the pleadings.

The pertinent facts as shown by the pleadings are as follows:

In October, 1926, relator acquired the property of the street railway in Kansas City, Missouri, and since that time has owned and operated said street railway system in said city. In March, 1927, Kansas City by ordinance granted relator a new street railway franchise for a period of thirty years. This franchise ordinance expressly fixed the rates of fare to be charged by relator for transportation of persons and definitely provided that no increase in rates of fare should be asked for or granted so long as the rates fixed by the franchise ordinance produced a net annual income of $2,000,000 plus eight per cent on new capital expenditures, and not then unless the cost

of operation and material for repairs and maintenance increased in the preceding year to the amount of $100,000, but in case cost or cost prices receded rates were to be lowered in the amount and in the manner provided in said ordinance. Further provision was made that in event the rates of fare fixed by the ordinance resulted in a net income or return of $100,000 in any year in excess of $2,000,000 plus eight per cent on new capital expenditures, fares should be reduced in amount and manner as provided in said ordinance; and likewise for further increases in net income or return, like proportionate reductions should be made. The ordinance also provided that the street car company should expend certain money on its property, make certain extensions of its lines, do certain street paving, sprinkle, oil and clean certain streets, pay to the city certain licenses, viaduct rentals, etc.

In the suit filed by Kansas City in the Circuit Court of Jackson County the petition set out the terms and conditions of the franchise ordinance, alleges that the street car company violated all the terms and conditions of the franchise, then asked (1) that the street car company be enjoined from violating its contract with the city or accepting any income other than that provided in the contract and that it be compelled to comply with its contractual obligations before seeking relief of any kind, and (2) that the Public Service Commission be enjoined from construing or enforcing the franchise contract or proceeding with the valuation, appraisal and audit of the company's property or from taking further steps relating to the company's application for increase in rates until some court of competent jurisdiction determined the validity or invalidity of the franchise contract.

The principal question in the case is whether or not the franchise granted to the street car company by Kansas City prevents the company from asking an increase in rates and precludes the Public Service Commission from fixing reasonable rates irrespective of the rates fixed in the franchise ordinance. The fixing of reasonable rates which a utility may charge for public service is the exercise of the police power of the State. Section 5 of Article 12 of the Constitution of this State provides that:

"The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well being of the State."

This constitutional provision prohibits the Legislature from abridging the police power of the State or authorizing a municipal corporation to make a contract that would abridge or limit such power. The fixing of public utility rates being an exercise of the police power of the State, it must follow that the Legislature could not by contract, statutory enactment or otherwise, limit or abridge the right of the

State to fix reasonable rates for public service, because to do so would be to abridge the exercise of the police power of the State, a thing which the Constitution prohibits. This proposition is so thoroughly well settled by numerous decisions of this court that nothing more need be written on the subject. It will be sufficient for present purposes to call attention to some of the cases dealing with this question. In State ex rel. City of Sedalia v. Public Service Commission et al., 275 Mo. 201, 209-11, 204 S. W. 297, we said:

"Going to our Constitution, the real questions are, can the Legislature authorize a municipal corporation or a public service corporation to make a contract as to rates which contract will preclude the sovereign power of the State from fixing reasonable rates irrespective of the contract? . . . Can the State of Missouri divest itself of the right to exercise its police power? This court has held, and we think rightfully so, that the fixing of reasonable rates for service to be rendered to the general public . . . is an exercise of the sovereign police power of the State. . . . Such power cannot be contracted away, nor can the Legislature of the State authorize a municipal corporation to contract away this police power of the State. . . . It is, however, clear that under our Section 5 of Article 12 of the Constitution of 1875 . . . the Legislature itself cannot abridge the police power of the State. Nor can it authorize a municipal corporation to make a contract abridging or limiting such police power. . . . We have preferred to rest the ruling in this case upon what this court has previously ruled, which rulings have been in the light of our own peculiar constitutional provision. Under it the sovereign police power of the State is preserved intact, irrespective of contracts with reference to rates for public service. Under it no contract as to rates will stand as against the order of the Public Service Commission for reasonable rates, whether such reasonable rates be lower or higher than the contract rate."

Again in State ex rel. Washington University v. Public Service Commission, 308 Mo. 328, 342, 272 S. W. 971, we said:

"The Public Service Commission, in fixing rates, cannot be clogged or obstructed by contract rates. This question was early thrashed out by this court in several cases, some of which went to the Federal Supreme Court, in each of which this court was sustained. The original case, the ruling in which has never been changed, is State ex rel. City of Sedalia v. Public Service Commission, 275 Mo. 201. The effect of this and subsequent holdings, is that the contract prices count for naught in the fixing of rates by the Public Service Commission. The Public Service Commission is not a court, and cannot be influenced in any regard by the contract prices as to rates."

In the recent case of Ex parte Packman, 317 Mo. 732, 735, 296 S. W. 366, this court in banc, said:

"Now the power to supervise the rates, fares or charges exacted by a street railway corporation for the transportation of persons, and the regulations or practices of such corporation affecting rates, rests exclusively with the Public Service Commission. [Sec. 10456 R. S. 1919.] Consequently the provisions of the charter of St. Louis purporting to confer such power on it or its board of aldermen are void. [State ex rel. v. Public Service Commission, 270 Mo. 429.] And ordinances in conflict with the Public Service Commission Law, whether enacted pursuant to charter provisions or not, are likewise void."

Many cases from this and other jurisdictions, including the Supreme Court of the United States, are in line with the cases above cited.

In determining whether or not the franchise contract precludes the Public Service Commission from taking cognizance of the company's application for increase in rates, and conducting an investigation to determine whether the rates fixed by the franchise ordinance are reasonable, three well-settled propositions of law must be kept in mind: (1) That the fixing of reasonable rates to be charged by a utility for public service is the exercise of the police power of the State; (2) that the Legislature can delegate the exercise of that power to a body created by it, and (3) that by the passage of the Public Service Commission Act, the Legislature did delegate that power to the Public Service Commission, and under the power so delegated the Commission may at any time, on its own motion or on complaint, conduct a hearing for the purpose of determining whether or not the rates charged by a utility for service it renders to the public, are just and reasonable to both the utility and the public. [Sec. 10456, R. S. 1919.]

Counsel for the city concede that prior to 1925 the power to regulate public utility rates was vested exclusively in the Public Service Commission, but contend that in 1925 the Legislature enacted an amendment to the Public Service Commission Act (Laws 1925, p. 321) expressly authorizing cities of over seventy-five thousand inhabitants to enter into "service-at-cost" agreements with utilities, thus limiting the power previously granted to the Public Service Commission and restoring to such cities the power they had over utilities prior to the passage of the Public Service Commission Act.

By the passage of the Public Service Commission Act the Legislature delegated the power to regulate utility rates to the Public Service Commission. There is no doubt about the authority of the Legislature to take that power away from the Commission and vest it in some other body. The question is whether or not it did so by the Act of 1925. This act reads as follows:

"A service-at-cost agreement is hereby defined as an agreement, whether in the form of a contract or contained in a franchise or permit, entered into between a city and a common carrier operating or

proposing to operate in such city, providing generally for operation by such common carriers with rates of fare directly or indirectly dependent, upon the excess of revenue after deductions for operating expenses, maintenance, taxes, allowances for renewals and replacement, and a return on the value of the property used in or devoted to the public service as such value is determined by the public service commission. Any city in this State now or hereafter having a population of seventy-five thousand inhabitants or more and any common carrier operating or proposing to operate therein have and shall have power to enter into service-at-cost agreements, as herein defined. Before the common carrier shall commence operations under any such service-at-cost agreement the same shall be submitted to the public service commission for its approval. The public service commission shall have power to approve any such service-at-cost agreement and to make such orders from time to time as it may deem necessary to effectuate the same. *Provided,* no city shall have power to enter into any such contract for a period or term of more than thirty years unless the same is approved by a majority vote of the qualified electors of such city voting upon such proposition when submitted at a general or special election held for such purpose; and no such contract shall give or grant or be held to create an exclusive franchise or privilege.''

This act does not pare away any of the power previously given the Commission in the fixing of rates in the first instance. It expressly provides that the value of the property used in the public service shall be determined by the Public Service Commission. It also provides that after the contract is made, the utility shall not commence operations thereunder until the contract has been submitted to the Commission for its approval. This does not mean that the Commission shall blindly approve the contract. The authority to approve necessarily implies authority to investigate the facts in order that an intelligent approval may be made. This statute provides that the cities named therein may enter into ''service-at-cost'' agreements with common carriers with rates of fare dependent on the excess of revenue after deductions for operating expenses, maintenance, taxes, allowances for renewals and replacements, and a return on the value of the property used in or devoted to the public service as such value is determined by the Public Service Commission. It would be the duty of the Commission, before either approving or disapproving the contract, to examine and consider all of the elements named in the statute which go to make up the rate, in order to determine whether or not the proposed rate would accomplish the purposes named in the statute. Thus far considered, the statute recognizes the authority of the Commission by providing that it shall fix the value of the property, approve the contract before operations shall commence thereunder and make such orders from time to time as it may deem necessary to effectuate the same.

This brings us to the vital question in the case, and that is, whether or not the rates fixed by the franchise contract are subject to future regulation by the Public Service Commission.

It is settled beyond any question of doubt that the State cannot divest itself of the right to exercise the police power. The Legislature cannot by statute authorize a municipal corporation to make a contract with a nullity as to rates which will prevent the State, in the exercise of the police power, from fixing reasonable rates irrespective of the contract. [State ex rel. City of Sedalia v. Public Service Commission, supra.] From this it follows that the franchise contract entered into between Kansas City and the street car company does not prevent the State from fixing reasonable rates whether such reasonable rates be higher or lower than the rates fixed by the franchise ordinance, and this may be done by the Legislature itself or by its duly authorized agent. By the terms of the Public Service Commission Act, the power to fix reasonable rates was delegated to the Public Service Commission, and the Commission still has that power unless it was taken away by the Act of 1925. We have already pointed out that this act recognizes the authority and power of the Commission relative to the making of the contract between the city and the utility. It is silent as to future regulation of rates. It says nothing on that subject one way or the other, and there is nothing in the act to indicate an intent on the part of the Legislature to take the State's power of rate regulation away from the Commission. In fact the city does not so contend. The contention is that after the Commission approved the contract, the rates fixed thereby were not subject to regulation or change unless the company extended its property by new capital expenditures, in which event the company might apply to the Commission for a revaluation of its property and a readjustment of the rates on that ground alone. In other words, the contention is that the authority of the State to revalue the property or change the rate depends upon whether or not the company makes additions and betterments to its property by new capital expenditures.

If the statute be given that construction it would abridge the exercise of the police power of the State in the fixing of reasonable rates and for that reason would be unconstitutional. If it be construed as authorizing a contract until such time as the State saw fit to exercise the police power then it would not affect this case one way or the other. In either event, the statute would not take away from the Commission any powers delegated to it by the Public Service Commission Act.

The city contends that irrespective of its authority to contract as to rates, it did have authority to contract as to valuation, income and depreciation.

Every utility is entitled to charge a rate that will produce a reasonable net income on the fair value of its property after deduction

for depreciation and necessary expenses incident to operation. Valuation, income and depreciation are chief factors to be considered in determining what a reasonable rate would be. [Home Telephone Co. v. City of Carthage, 235 Mo. 644, 660-7, 139 S. W. 547.] If, as we have held, a municipal corporation may not by contract fix and regulate utility rates, it must follow that it cannot, by contract, fix and regulate the factors which determine such rates, and thus accomplish by indirection what the law prohibits it from doing directly.

The franchise ordinance, in addition to fixing rates, provided that the street car company should make certain extension of its lines, do certain street paving and other things mentioned in the ordinance. There is no doubt about the right of the city and the company to contract under lawful supervision, as to extension of car lines, street paving, etc., but they could not by agreement fix rates of fare to be charged by the street car company.

It is claimed that the company breached the franchise agreement as to extension of its lines, street paving, etc., thereby forfeiting its rights, if any, to an increase in rates.

The Commission has exclusive power to determine and fix reasonable rates irrespective of the rates fixed by the franchise ordinance, but it has no jurisdiction to construe or enforce the contract as to extension of car lines, street paving, etc., or to try or determine an alleged breach thereof. When the application for increase in rates was filed with the Commission, it was the official duty of the Commission to determine and fix reasonable rates of fare, and leave the construction and enforcement of the contract to a court having jurisdiction to determine such matters. A similar question was before us in State ex rel. Terminal Ry. Co. v. Public Service Commission, 308 Mo. 359, 272 S. W. 957. In that case the Commission ordered the Railway Company to construct and maintain at its own expense a viaduct across Oak Street in Kansas City. The city insisted that the railway should pay all expenses of construction and maintenance on the ground that it had bound itself by contract so to do, and the Commission so ordered. On appeal to this court, we held that the city and the railway could not by contract determine the manner, including the particular point of the crossing of the railroad by a street, because of the paramount interest of the public in the question of safety involved, but that they could by agreement apportion the expense of the construction and maintenance of the crossing. In disposing of the case RAGLAND, J., said:

"The Commission should therefore have determined and prescribed the manner, including the particular point, of crossings, and left questions pertaining to the construction and enforcement of the alleged contract for determination in a forum where the requisite jurisdiction existed."

923

It is claimed that prohibition is not the proper remedy in this case for the reason that the Circuit Court of Jackson County had jurisdiction to try the suit to construe the franchise contract, and the granting of the temporary injunction was only incidental and ancillary thereto.

If the suit pending in the circuit court were one to *construe* and *enforce* the franchise contract, that court could protect its jurisdiction by incidentally enjoining the Public Service Commission from proceeding to fix and determine rates, if the Commission's authority to fix rates were an issue to be determined in that case. We have already pointed out that the attempt to fix rates by the franchise contract was futile. Any judgment the circuit court could lawfully render in the suit pending before it would not affect the Commission's authority to fix rates, and for that reason, it had no jurisdiction to enjoin the Commission from proceeding with the rate hearing pending the determination of that case. Prohibition is the proper remedy where an inferior court is proceeding without or in excess of its jurisdiction. [Sec. 2059, R. S. 1919; State ex rel. Hyde v. Westhues, 316 Mo. 457, 469, 290 S. W. 443.]

The city invokes the equitable doctrine that one who comes into a court of equity must come with clean hands. Contention is made that the street car company is not entitled to any relief because of its admitted non-compliance with the terms and conditions of the franchise agreement.

This contention overlooks the fact that the question of rate regulation is completely divorced from other matters about which the city **and the** utility might lawfully contract. The function of rate regulation rests exclusively with the Public Service Commission. It is a question of public concern which cannot be controlled by contract. The fact that the company violated the terms of the contract concerning matters about which it and the city had a lawful right to contract, would not prevent the company from seeking an increase in rates, a matter about which they had no lawful right to contract. Matters wholly outside the contract cannot be influenced or controlled by the terms of the contract or an alleged breach thereof. The equitable rule invoked has no application here.

The Public Service Commission Act in authorizing the Commission to determine and fix reasonable rates for public service irrespective of franchise rates, does not violate the contract or due-process clauses of either the Federal or State Constitution. [City of Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 396-9; City of Kansas v. Public Service Commission of Missouri et al., 250 U. S. 652; State ex rel. City of Sedalia v. Public Service Commission of Missouri, 251 U. S. 547; City of Fulton v. Public Service Commission of Missouri, 251 U. S. 546; City Water Company v. City of Sedalia, 288 Mo. 411, 419-22, 231 S. W. 942.]

There is no doubt about the jurisdiction of the Circuit Court of Jackson County to *construe* and *enforce* contracts. Neither is there any doubt about the right of the city to invoke that jurisdiction to compel the street car company to comply with the terms of the franchise contract concerning matters about which the city and the company had a lawful right to contract, but such authority does not vest the circuit court with jurisdiction to enjoin the Public Service Commission from exercising its exclusive jurisdiction to determine and fix reasonable utility rates.

The Public Service Commission Act vests in the Commission exclusive jurisdiction to determine and fix reasonable rates (Sec. 10456, R. S. 1919) and expressly denies the right of the circuit court to enjoin the exercise of that jurisdiction by the Commission. The pertinent part of Section 10522, Revised Statutes 1919, reads as follows:

'No court of this State, except the circuit courts to the extent herein specified and the supreme court on appeal, *shall have jurisdiction* to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, *or to enjoin, restrain or interfere* with the commission in the performance of its official duties.'' (Italics ours.)

This statute expressly prohibits the circuit court from *enjoining, restraining or interfering* with the Commission in the performance of its official duties except to the extent specified in the statute. Turning to the statute we find that the only authority given the circuit court is to review the action of the Commission by "writ of review" after the Commission has denied a rehearing, with right of appeal to the Supreme Court.

Whether or not the Kansas City Public Service Company is entitled to an increase in rates is not before us for decision and we do not decide that question. What we do hold is that the Public Service Commission has exclusive jurisdiction to determine that question, subject to review by the courts, and the circuit court has no authority to enjoin the exercise of that jurisdiction.

We regard the city's suit as one for injunctive relief only. It is our conclusion that the preliminary rule should be made absolute. It is so ordered.

All concur. *Blair, J.,* in the result.